# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| GREGORY C. HIGGINS,<br><br>            Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. 13-cv-00850 NC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 22 |

   Plaintiff Gregory Higgins seeks judicial review of the Commissioner of Social Security's final decision denying Higgins's claim for disability insurance benefits and supplemental security income (SSI). Both parties move for summary judgment. The issue before the Court is whether substantial evidence supports the Administrative Law Judge's (ALJ) evaluation of the medical evidence in assessing Higgins's residual functional capacity (RFC). The Court finds that the ALJ articulated specific and legitimate reasons for according only some weight to the opinion of an examining physician and that the ALJ's decision is supported by substantial evidence in the record. Therefore, the Court DENIES Higgins's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

Case No. 13-cv-00850 NC
ORDER RE: SUMMARY JUDGMENT

# I. BACKGROUND

## A. Agency Review

Higgins filed applications for disability insurance benefits and SSI payments pursuant to Titles II and XVI of the Social Security Act in September 2011. (AR 11, 22-33.) In both applications, Higgins alleged that his disability began April 1, 2011. (AR 11, 122, 130.) The agency denied Higgins's claims initially on February 6, 2012. (AR 11, 54-55.) Higgins then filed a request for reconsideration dated March 7, 2012, (AR 70-71), which was denied on April 11, 2012, (AR 11, 56-57).

## B. Administrative Review

On April 20, 2012, Higgins requested a hearing before an ALJ. (AR 11, 78-79.) On August 9, 2012, an ALJ convened a hearing at which Higgins and a vocational expert testified. (AR 29-53.)

### 1. Higgins's Testimony at the August 9, 2012 Hearing

Higgins testified before the ALJ about his education level, previous work experience, and his medical impairments. (AR 33-44.) Regarding his mental capacity, Higgins testified that he has trouble with his memory and forgets things, like phone numbers and names. (AR 42.) Higgins replied "yes" to his attorney's question: "[s]o do you have trouble being around people who are just — not just your family, but the public?" (AR 43.) Higgins also testified that he has trouble following directions on the job, stating that "every time I get a job, I always get into it with the supervisor, the foreman, or somebody on that job." (AR 44.) Higgins claims that this is why he has "never worked on a lot of [jobs] no more than six months, seven months." (AR 44.)

### 2. The Vocational Expert's Testimony at the August 9, 2012 Hearing

The vocational expert, Michael Stinson, also testified at the hearing. (AR 44-53.) In response to the ALJ's question about whether there were jobs a person limited to light work with occasional contact with the public and coworkers could perform, the vocational expert testified that there were and gave examples such as a small products assembler, housekeeping cleaner, and copy machine operator. (AR 47-48.)

Higgins's attorney then asked the vocational expert to assume that "there's going to be occasional, but not frequent conflict between the hypothetical individual and supervisory instructions and that the conflict would be that the employee would become angry and yell back at the supervisor. He would go back to his task, but they would have that confrontation and that this would occur roughly two to three times per week in the normal work pattern." (AR 51.) Higgins's attorney then asked "[w]ould that confrontation with supervisory authority, would that affect his ability to perform work in the light range?" (AR 51.) Stinson replied that it would, noting that "the rule of thumb is three strikes and you're out . . . . It's just too much of a threat to safety and it's insubordination and things. It's just [sic] isn't acceptable." (AR 51.)

### 3. The ALJ's Findings

On September 11, 2012, the ALJ issued a decision determining that Higgins was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (AR 11-22); 42 U.S.C. §§ 416, 423, 1382c. Applying the five-step sequential evaluation process, the ALJ first found that Higgins had not engaged in substantial gainful activity since April 1, 2011. (AR 13.) Second, the ALJ found that Higgins had the following "medically determinable and 'severe' impairments: degenerative changes of the left shoulder, degenerative changes of the spine, mild left foot degenerative changes, obesity, non-cardiac chest pain, hepatitis C by history, and antisocial personality disorder with substance abuse in recent remission (20 C.F.R. §§ 404.1520(c) and 416.920(c))." (AR 13.) Third, the ALJ determined that Higgins did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, subpt. P, app. 1. (AR 14-16.) The ALJ found that the severity of Higgins's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listings 12.04 for affective disorder and 12.08 for personality disorder. (AR 15.) At this stage, the ALJ noted that Higgins had moderate difficulties in social functioning and concentration, persistence, and pace in completing tasks and that the record revealed a history of interpersonal conflict. (AR 15.) The ALJ stated, however, that

"the claimant has experienced no credible episodes of decompensation, which have been of extended duration." (AR 15.) [1]

After considering the entire record, the ALJ found at the fourth step that in spite of Higgins's impairments, he "ha[d] the residual functional capacity to perform a modified range of light work" within the meaning of 20 C.F.R. §§ 404.1567(b), 416.967(b). (AR 16-21.) The ALJ defined such work as involving:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; standing and walking for 6 hours in an 8-hour workday; sitting for sitting for 6 hours in an 8-hour workday; and pushing/pulling the same weight as carrying. Additionally, the claimant can frequently climb ramps and stairs and occasionally climb ladders and scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. The claimant can perform occasional overhead reaching with the left upper extremity. He can occasionally operate foot control with the left lower extremity. The claimant retains the ability to understand, remember, and carry out routine, repetitive 1-2-3 step tasks instructions primarily learned by verbal instructions or job demonstration. He is limited to occasional interaction with the general public and coworkers. Finally, the claimant would be able to stay on task and maintain a 40-hour workweek with incidental one to two reminders per week, which does not constitute prompting or coaching from supervisors.

(AR 16.) Finally, at the fifth step, the ALJ considered whether Higgins was able to do any other work considering his RFC, age, education, and work experience. (AR 21-22.) The ALJ concluded that while Higgins's limitations prevented him from doing past work, he was capable of performing other work in significant numbers in the national economy, citing the vocational expert's testimony that a person with Higgins's limitations would be

---

[1] "Episodes of decompensation" is defined by Social Security Regulations as: "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Moreno v. Astrue*, No. 08-cv-1022, 2009 WL 2151855, at *14 n.2 (S.D. Cal. July 17, 2009) (quoting 20 C.F.R. 404, subpt. P, app. 1). The ALJ characterized episodes of decompensation of extended duration as meaning three episodes within one year, or an average of once every four months, each lasting for at least two weeks. (AR 15.)

Case No. 13-cv-00850 NC
ORDER RE: SUMMARY JUDGMENT
4


able to perform light, unskilled occupations such as a small products assembler, housekeeping cleaner, and copy machine operator. (AR 21-22.)

### C. The Appeals Council's Denial of Review

Higgins appealed the ALJ's decision to the Appeals Council, which denied his request for review on December 3, 2012. (AR 3-5.) Higgins then filed this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c). Dkt. No. 1. Both parties consented to the jurisdiction of a magistrate judge. Dkt. Nos. 8, 11. Higgins moved for summary judgment and the Commissioner filed a cross-motion. Dkt. Nos. 20, 22.

## II. STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the [final] decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). "When the Appeals Council denies a request for review, . . . the ALJ's decision becomes the final decision of the Commissioner." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation and quotation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal citation and quotation omitted). It is evidence that a reasonable mind would accept as adequate to support the conclusion. *Burch*, 400 F.3d at 679. "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal citation and quotation omitted).

## III. DISCUSSION

Higgins contends that the ALJ erred in his evaluation of the medical evidence in assessing Higgins's RFC. Dkt. No. 20 at 3:18-19. A claimant's RFC is what he can still do

despite his physical, mental, and other limitations. *See Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *see also* 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c). In determining a claimant's RFC, the ALJ "must take into account the claimant's testimony regarding his capability, [and] the ALJ must assess that testimony in conjunction with the medical evidence." *Chaudhry v. Astrue*, 688 F.3d 661, 670 (9th Cir. 2012). When reviewing an ALJ's weighing of medical evidence, additional standards apply. *Burch*, 400 F.3d at 679; 20 C.F.R. § 416.927. Generally, "the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." *Ryan*, 528 F.3d at 1198. "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216). For an ALJ to disregard the contradicted opinion of a weightier physician, he or she "must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989) (internal quotation and citation omitted).

Here, Higgins's challenge to the ALJ's RFC assessment is based primarily on the arguments that the ALJ should have given more weight to the opinion of the consultative examining psychologist and less weight to a conflicting opinion of a non-examining, state agency reviewing physician. Dkt. No. 20 at 6-7. The Court examines these arguments in turn.

**A.   The ALJ Articulated Specific and Legitimate Reasons Supported by Substantial Evidence for Discounting the Opinion of the Examining Physician.**

Higgins contends that the ALJ failed to give proper weight to the opinion of Dr. Smith, a consultative examining psychologist. Dkt. Nos. 20 at 5:14-26; 23 at 3:17-19. The Court disagrees.

Higgins met with Anne Smith, Ph.D. on November 11, 2011, for a mental status examination. (AR 560.) Dr. Smith diagnosed Higgins with: (1) alcohol dependence in early full remission by self-report; (2) cocaine dependence in early full remission by self-report; (3) antisocial personality disorder, noting parenthetically a "pervasive pattern of

disregard for and violation of the rights of others, failure to conform to social norms with respect to lawful behaviors; impulsivity or failure to plan ahead; irritability and aggressiveness as indicated by repeated physical fights or assaults; consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior; and lack of remorse"; and (4) a current GAF score of 48. (AR 564.) Dr. Smith stated that "[b]ased on observations and Mr. Higgins' performance during this exam, his reasoning abilities are poor. His ability to make occupational, social, and personal adjustments is impacted by his mental illness." (AR 564.) Dr. Smith concluded that Higgins's prognosis was poor. (AR 564.)

In assessing Higgins's RFC, the ALJ gave "some weight" to Dr. Smith's findings to the extent her findings were consistent with the ALJ's decision. (AR 18.) The ALJ reasoned that Dr. Smith "apparently relied quite heavily on the claimant's subjective report of symptoms and limitations, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, there exist good reasons for questioning the reliability of the claimant's subjective complaints." (AR 18.)

Higgins contends that the ALJ erred in according only some weight to the opinion of Dr. Smith because, contrary to the ALJ's determination that Dr. Smith relied heavily on Higgins's subjective report of symptoms and limitations, "Dr. Smith made clear that that [sic] her opinions were based upon her observations and Higgins's performance during the mental status examination." Dkt. No. 20 at 5:22-26. Higgins further argues that the ALJ did not "articulate specific and explicit reasons for rejecting the opinions of the weightier physician [Dr. Smith]," which "would support a finding of disability." *Id.* at 7:1-7.

In *Franklin v. Colvin*, No. 12-cv-3503 PJH, 2013 WL 4396743, at *6, *8 (N.D. Cal. Aug. 13, 2013), the court held that an ALJ met his burden of providing specific and legitimate reasons for according limited weight to an examining physician's opinion on the grounds that the opinion was based primarily on claimant's subjective report and the ALJ found the claimant not credible. The court reasoned that although the physician made observations about the claimant's general appearance, attitude, and behavior during

claimant's mental status examination, and performed a series of intellectual functioning tests, the physician "did not cite her own observations in assessing [claimant's] limitations," and instead "relied primarily on [claimant's] subjectively reported symptoms and limitations." *Id.* at *6-*7.  The court concluded there was substantial evidence to support the ALJ's finding that the examining physician did not rely on evidence or observations in determining that the claimant could not perform most jobs, and accordingly, the ALJ properly discounted that opinion.  *Id.* [2]

By contrast, the Ninth Circuit in *Ryan* determined that an ALJ improperly rejected the opinion of an examining physician where the examining physician's evaluation "recorded several of his own clinical observations of [the claimant]" in determining that the claimant was incapable of maintaining a regular work schedule.  528 F.3d at 1199.  The court cited multiple clinical observations of the examining physician, such as: "[b]ehavior and mannerisms are somewhat odd.  She has rapid speech . . . . She is easily agitated and appears to be very angry[;] anxious, distraught, nervous, shaky, and edgy."  *Id.*  Because the record demonstrated that the examining physician relied on his clinical observations, as opposed to claimant's subjective complaints, the court held that the ALJ erred in discounting the examining physician's opinion.  *Id.* at 1199-1200.

As a threshold issue, Dr. Smith never opined that Higgins is unable to engage in gainful activity as a result of his mental impairments.  However, insofar as Dr. Smith's opinion supports a more restrictive mental RFC, the ALJ articulated specific and legitimate reasons for discounting Dr. Smith's opinion by explaining that she "relied quite heavily on the claimant's subjective report of symptoms and limitations, and seemed to uncritically accept as true most, if not all, of what the claimant reported."  (AR 18.)  Although Higgins asserts that Dr. Smith's opinions were based on her own observations, on review of the opinion, this argument lacks support.

---

[2] Similar to the present case, in *Franklin*, the ALJ did not "entirely reject the [examining physician's] assessment; rather, the ALJ gave the opinion limited weight" in determining the claimant's limitations.  2013 WL 4396743, at *5.

Case No. 13-cv-00850 NC
ORDER RE: SUMMARY JUDGMENT

8

As in *Franklin*, and unlike in *Ryan*, Dr. Smith does not cite any clinical observations or findings in support of her parenthetical notation following her diagnosis of antisocial personality disorder, which appears to summarize Higgins's self-reported history of mental illness. (AR 564.) Moreover, Dr. Smith's report almost entirely lacks any statements that could be construed as a clinical finding or observation, with the majority of the report being a summary of what Higgins said and thought (e.g. "According to Mr. Higgins, he has had bipolar and depression for 'several years.'"; "He reported that he did not feel bad about killing [a] dog."). (AR 561-564.) Although Dr. Smith noted that "Mr. Higgins is paranoid and concerned about everyone's intentions toward him," and that Higgins at one point "appeared verbally agitated but his facial expression was flat," she cites neither of these statements to support her ultimate diagnosis. (AR 563-64.) Furthermore, Dr. Smith makes no determination as to how either of these findings, or any of her conclusions, would impact Higgins's ability to maintain a job, merely stating that "[h]is ability to make occupational . . . adjustments is impacted by his mental illness." (AR 564.) Accordingly, the ALJ met his burden of setting forth specific and legitimate reasons for giving less weight to Dr. Smith's assessment of Higgins's mental limitations.

The specific and legitimate reasons the ALJ cited for according some weight to Dr. Smith's opinion are supported by substantial evidence in the record. In discounting Dr. Smith's opinion as based uncritically on claimant's subjective report, the ALJ explained that "there exist good reasons for questioning the reliability of the claimant's subjective complaints." (AR 18.) The ALJ noted that the record included evidence strongly suggesting that Higgins had exaggerated his symptoms and limitations, citing three bases for this assertion: (1) Higgins had been treated for complaints of back and foot pain, but observed to ambulate normally (*see* AR 655); (2) Higgins had reported in 2007 that he had not used drugs since 1986, but an intensive outpatient program counselor had found evidence of misrepresentation in his disclosures (*see* AR 300); and (3) Higgins had reported having bipolar disorder for several years, yet treatment notes from Metrocare Services showed that he had not sought psychiatric care until after the alleged onset date (i.e. when

he filed for benefits) (*see Burch*, 400 F.3d at 681 (stating that an "ALJ is permitted to consider lack of treatment in his credibility determination.")) (AR 544-49).  (AR 18-19.)

Significantly, Higgins does not challenge the ALJ's evaluation of his credibility.  Not only did Higgins fail to raise this issue in his motion for summary judgment, but he also did not rebut the Commissioner's assertion in the cross-motion for summary judgment that the ALJ's credibility evaluation has not been challenged.  As such, Higgins fails to address the rationale on which the ALJ made his decision that Dr. Smith's opinion should be accorded less weight, as "[a] physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999).  Complaints are "properly discounted" when the ALJ "identif[ies] what testimony is not credible and what evidence undermines the claimant's complaints." *Lester,* 81 F.3d at 834.  Here, the ALJ cited specific evidence undermining Higgins's complaints—a history of exaggerating his limitations, evidence of past misrepresentation in his disclosures, and a lack of treatment—and therefore, properly discounted the weight of Dr. Smith's opinion in determining Higgins's RFC.

**B.     The Mental Aspect of Higgins's Residual Functional Capacity Assessment Is Supported by Substantial Evidence.**

Higgins contends that the ALJ's RFC assessment lacks the support of substantial evidence because the ALJ erred in giving "significant weight" to the opinion of Dr. Ghai, a state agency reviewing physician. Dkt. Nos. 23 at 4:11-12, 4:20-23; 20 at 6:1-2.  Contrary to Higgins's assertion, the mental aspect of the ALJ's RFC assessment is supported by substantial evidence.

Dr. Ghai conducted a Residual Functional Capacity Assessment of Higgins on February 2, 2012.  (AR 653.)  Dr. Ghai remarked in her consultant's notes that the medical record showed no prior psychological treatment until September 2011 (the month Higgins filed his applications for SSI and disability insurance benefits), and that as recently as August 2011, medical records from a physical examination at Parkland Hospital reflected

that Higgins presented with normal mood and affect, behavior, judgment, and thought content. (AR 649) (citing AR 332.) Dr. Ghai also noted that Higgins was "doing well" on medications and that there had not been any changes in medications made. (AR 649.)

Dr. Ghai made summary conclusions that Higgins was markedly limited in his ability to understand and remember detailed instructions, and his ability to carry out detailed instructions. (AR 651.) Dr. Ghai determined that Higgins was moderately limited in his ability to: (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) work in coordination with or proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) the ability to interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) respond appropriately to changes in the work setting; and (9) set realistic goals or make plans independently of others. (AR 651-652.) In her functional capacity assessment of Higgins, Dr. Ghai concluded that he retained "the ability to understand, remember and carryout simple instructions, make simple decisions, concentrate for extended periods, and interact with others as well as respond to changes in the work setting; overall capable of simple and repetitive tasks." (AR 653.)

In assessing Higgins's RFC, the ALJ determined that "[t]he mental aspect of the residual functional capacity given in [his] decision is supported by the conclusions of Veena Ghai, M.D." (AR 20.) The ALJ accorded Dr. Ghai's findings and assessment the weight of a non-examining source. (AR 20.)

On appeal, Higgins argues that Dr. Ghai's functional capacity assessment is not entitled to weight and is inconsistent with her summary conclusions. Dkt. Nos. 20 at 6:8-9; 23 at 4:24-26. Higgins argues that Dr. Ghai's "conclusion that he is capable of simple and repetitive tasks despite the moderate to marked limitations in various work functions is a

vocational conclusion that is not entitled to deference as a medical finding." Dkt. No. 23 at 4:24-26.  Finally, Higgins further asserts that Dr. Ghai's medical opinions, as opposed to her Functional Capacity Assessment, are "in line with the opinions of Dr. Smith."  Dkt. Nos. 20 at 6:9-22; 23 at 5:1-9.

Higgins's contention that Dr. Ghai's opinions are inconsistent with her summary conclusions is unavailing.  Aside from his conclusory assertion, Higgins fails to identify any such inconsistency.  Higgins does not explain why a finding that he is moderately limited in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors is inconsistent with Dr. Ghai's functional capacity assessment.  Dr. Ghai's assessment takes into account the medical limitations she identified, and incorporates these findings into her conclusion that Higgins is capable of interacting with others, carrying out simple instructions, making simple decisions, and performing simple and repetitive tasks.  (AR 651-53.)  The ALJ accommodated these findings by limiting Higgins to work that involves routine and repetitive, 1-2-3 step tasks and occasional interaction with the general public and coworkers.  (AR 16.)

Furthermore, while as a general rule, the opinion of a non-examining physician, standing alone, does not in itself constitute substantial evidence to support the denial of benefits, *Ryan*, 528 F.3d at 1202 (citing *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)), here, the ALJ relied upon additional evidence in determining the mental aspect of Higgins's RFC.  In weighing the medical opinions, the ALJ observed that Higgins was prescribed Risperdal after his provisional diagnosis of bipolar disorder in September 2011, and that in December 2011, medical records from Metrocare Services reflected that Higgins reported he was "doing well" with psychiatric medications.  (AR 19, AR 684.)  Dr. Smith examined Higgins on November 11, 2011, less than two months after Higgins began treatment, and her report does not account for whether Higgins's condition improved with medication. (AR 18, AR 561-62.)  As "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits," the ALJ

properly evaluated this fact in determining Higgins's RFC. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Lastly, Higgins maintains that Dr. Smith's opinion, supported by Dr. Ghai's medical findings (but not legal conclusions), and buttressed by the vocational expert's testimony, would support a finding of disability. Higgins bases this contention on the testimony of the vocational expert, who opined that the behavior of an individual who would have a conflict with his supervisor two to three times a week that would escalate to "verbal threatening" or a "physical threat," would not be acceptable in the workplace. (AR 51-52.) This argument is unpersuasive. The vocational expert testified in response to a hypothetical that is both (1) unsupported by medical evidence in the record, and (2) is based on the subjective reporting of Higgins, which the ALJ discounted. To accommodate Higgins's mental impairments, the ALJ limited Higgins to "occasional interaction with the general public and coworkers." (AR 18.) Neither Dr. Smith nor Dr. Ghai concluded that Higgins's mental limitations would lead to two to three instances of conflict a week that would reach the level of physical threat between Higgins and his supervisor. Moreover, there is no evidence in the record of interpersonal conflict that was not reported by Higgins and, therefore, would not be discounted by the ALJ's credibility determination.

On review of the record, the Court finds that the mental aspect of the ALJ's RFC assessment of Higgins is supported by substantial evidence.

//

## IV. CONCLUSION

The ALJ articulated specific and legitimate reasons for according only some weight to the opinion of the examining physician, Dr. Smith, and the ALJ's decision is supported by substantial evidence in the record.  Therefore, Higgins's motion for summary judgment is DENIED, the Commissioner's cross-motion for summary judgment is GRANTED, and the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Date:   April 11, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge

Case No. 13-cv-00850 NC
ORDER RE: SUMMARY JUDGMENT
14